# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LINDA SWANDA,

Plaintiff,

v.

MENARD, INC; Z OUTDOOR
LIVING, LLC; and AMG
INTERNATIONAL, LLC,

Defendants.

Case No. 24-cv-3239 (LMP/ECW)

**ORDER GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT**

Carl D. Schway, **Schway Law Firm, St. Paul, MN**, for Plaintiff Linda Swanda.

Steven E. Tomsche and Samantha Paige Flipp, **Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, MN**, for Defendant Menard, Inc.

Christopher J. Van Rybroek, **The Cincinnati Insurance Company, Coon Rapids, MN**, and Kafi C. Linville, **Arthur Chapman Kettering Smetak & Pikala, P.A., Minneapolis, MN**, for Defendants Z Outdoor Living, LLC and AMG International, LLC.

On July 16, 2024, Linda Swanda brought an action in Minnesota state court alleging that Menard, Inc. ("Menard"), Z Outdoor Living, LLC ("ZOL"), and AMG International, LLC ("AMG") (collectively "Defendants"), are liable for injuries she suffered at a Menard store in Minnesota. Menard removed the case to this Court. Menard, ZOL, and AMG now move for summary judgment. Because Swanda does not establish any genuine disputes of material fact, the Court grants the motions and dismisses the case.

## BACKGROUND

On August 2, 2020, Swanda and her partner Barbara Bougie visited a Menard store in St. Paul, Minnesota, in search of outdoor chairs for her balcony. ECF No. 35-1 at 14:6–

18; ECF No. 35-2 at 8:21–9:15.  While shopping, Swanda sat in a displayed model chair—the Backyard Creations Leona Swivel Chair (the "Leona chair")—designed by ZOL.  ECF No. 35-1 at 15:14–17; ECF No. 35-6 at 3; ECF No. 35-9 at 8.  Upon sitting down, the Leona chair "collapsed" and "threw" Swanda back where she landed on the ground.  ECF No. 35-1 at 15:14–23.  Swanda noticed that the top of the Leona chair was still connected to the base, and she got up in a lot of pain.  *Id.* at 15:24–16:11, 16:19–23.  Swanda knows nothing about whether the Leona chair was assembled correctly at the store or whether the chair was designed defectively.  *Id.* at 51:21–52:8.  There is no evidence about the specific Leona chair she sat in, and that chair no longer exists.  *Id.* at 55:13–15; ECF No. 35-8 at 2.

Bougie, who was a few feet away at the time of the accident, walked to where Swanda fell and was met by a Menard employee.  ECF No. 35-2 at 11:3–22.  Bougie stated that the Leona chair's "bottom part was off from the top," meaning that "the top of the chair had completely removed itself from the base," and that she and the employee noticed a "big bolt on the floor" right next to the chair.  *Id.* at 11:21–12:13.  Neither Bougie nor Swanda noticed the bolt before Swanda sat down.  *Id.* at 22:15–17; ECF No. 35-1 at 52:20–21.[1]  Bougie stated that an employee told a manager that he would try and put the bolt back in the Leona chair, but the manager told the employee not to do so and to instead take away the Leona chair.  ECF No. 35-2 at 14:22–15:1, 17:9–14, 23:20–24.  Bougie also stated that

---

[1]    On September 23, 2021, Swanda told an insurance investigator that a Menard employee told her "that there was a screw or bolt that wasn't tightened."  ECF No. 51 at 171.  But in her deposition on March 19, 2025, Swanda testified that she did not see the screw laying on the ground and that Bougie told her about it later.  ECF No. 35-1 at 52:20–53:9.

the employees never put the Leona chair back on its base, and one employee just "carried it [away] in two pieces." *Id.* at 14:19–24. But Bougie later stated that she "didn't know for sure" if the employee "was holding it in two." *Id.* at 24:20–22.

Surveillance video sheds light on some, but not all, of the incident. Swanda and Bougie first appear near a floor section filled with patio furniture, and they spend a short period of time looking at the furniture. ECF No. 47 at 0:08:34–0:09:28. Then, Swanda approaches a specific chair, examines it, and wiggles the backing of the chair. *Id.* at 0:09:25–0:09:51. At that point, the camera abruptly changes its direction, so that Swanda is no longer in view. By the time the camera shifts back, over a minute has passed. *Id.* at 0:11:03. The incident appears to have occurred in that time, as at that point Swanda is talking to Bougie and gesturing to her back. *Id.* at 0:11:10–0:11:24. Bougie then inspects the Leona chair, in which the top of the chair is still connected to the bottom, wiggling it several times, *id.* at 0:11:30–0:11:42, before leaving the area, *id.* at 0:12:10. After Bougie returns, two employees appear, *id.* at 0:14:47, and Bougie and Swanda converse while one of the employees begins inspecting the Leona chair by sitting in the chair, leaning back, and then standing up and wiggling the backing and examining the area under the seat where the base and seat connect, *id.* at 0:15:12–0:15:36. A third employee later appears and talks to Bougie for about a minute before Bougie, Swanda, and the employees leave the area. *Id.* at 0:16:25–0:17:46. The first employee who responded continues inspecting the Leona chair, eventually flipping it over to look at where the base and seat connect. *Id.* at 0:17:41–0:18:36. He then does the same with a nearby chair. *Id.* at 0:18:37–0:19:12. After looking

3

at the second chair, the employee picks up the chair on which Swanda had sat and carries it away.  *Id.* at 0:19:14–0:20:00.

On July 16, 2024, Swanda initiated this action in state court by serving it on Defendants.  ECF No. 1-2.  Menard removed it to this Court on August 12, 2024, citing diversity jurisdiction under 28 U.S.C. § 1332(d).  ECF No. 1.  In her complaint, Swanda alleges that Menard "was negligent in assembling" the chair, ECF No. 1-2 at 3, and that ZOL and AMG—as designer and manufacturer of the Leona chair, respectively—are strictly liable for "displaying a defective and dangerous chair for sale," *id.* at 4.

On August 31, 2024, Swanda filed for Chapter 7 Bankruptcy. *In re Swanda*, No. 24-32247, ECF No. 1 (D. Minn. Bankr. Aug. 31, 2024).  In her initial petition, Swanda stated that she did not have any "[c]laims against third parties, whether or not [she had] filed a lawsuit or made a demand for payment," and that she was not a party to any civil lawsuit.  *Id.* at 15, 46.  The bankruptcy case was discharged on December 3, 2024.  *Id.*; ECF No. 13. The discharge covered debts Swanda owed for medical expenses.  ECF No. 51 at 37.  On March 19, 2025, Swanda was deposed in this case, where she acknowledged that she had not disclosed this lawsuit in her bankruptcy case.  ECF No. 35-1 at 10:14–14:4.

Defendants moved for summary judgment on December 10, 2025.  ECF Nos. 33, 38.  Defendants first argue that Swanda is barred from litigating this claim by the doctrine of judicial estoppel because she did not disclose it during her prior bankruptcy case.  *See* ECF No. 34 at 7–10; ECF No. 40 at 4–6; *see Hughes v. Canadian Nat'l Ry. Co.*, 105 F.4th 1060, 1068–70 (8th Cir. 2024) (discussing judicial estoppel with relation to bankruptcy proceedings).  Second, Defendants argue that Swanda does not demonstrate a genuine

4

dispute of material fact that any Defendant is liable.  ECF No. 34 at 10–16; ECF No. 40 at 7–11.

Also on December 10, 2025, Swanda moved to reopen her bankruptcy case "for the limited purpose of amending schedules to disclose and claim as exempt an asset not previously scheduled," specifically a "potential personal injury claim arising from a fall that occurred at a Menard[] retail store prior to filing her chapter 7 case."  *In re Swanda*, No. 24-32247, ECF No. 15 (D. Minn. Bankr. Dec. 10, 2025).

## ANALYSIS

Summary judgment is proper only if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  *Riedl v. Gen. Am. Life Ins.*, 248 F.3d 753, 756 (8th Cir. 2001) (citation omitted).  At this procedural juncture, the Court does "not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue."  *Avenoso v. Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (citation omitted).  Additionally, the Court must view the facts in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  As a federal court sitting in diversity, the Court applies the substantive law of the state in which it sits.  *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696, 698 (8th Cir. 2001).  Here, all parties agree that Minnesota law applies. ECF No. 34 at 11; ECF No. 40 at 9; ECF No. 48 at 3.  Accordingly, the Court "must predict how the Supreme Court of Minnesota would rule" and "follow decisions of the intermediate state court when they are the best evidence of Minnesota law."  *Neth. Ins. Co. v. Main St. Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014).

5

## I.    Claims against Menard

In Swanda's complaint, she alleges that Menard was "negligent in assembling" the Leona chair, that Menard displayed a "defective and dangerous chair for sale," and that Menard is strictly liable.  ECF No. 1-1 at 3–4  The complaint does not itself provide the factual basis for these allegations, but in response to the motions for summary judgment, Swanda contends that the Leona chair had a loose screw or that the screw had fallen off the chair completely, and that because "[c]hairs are not meant to collapse," the evidence "points to negligent assembly of the chair by Menard[]."  ECF No. 48 at 6.  And for authority, Swanda points the Court to the Minnesota standards for products liability, general negligence, and *res ipsa loquitur*.  ECF No. 48 at 3–4.  The Court construes Swanda's complaint, then, to assert claims of general negligence and products liability.  So, too, does Menard.  ECF No. 40 at 7–11.

### A.    Negligence

To establish liability based upon negligence, a plaintiff must demonstrate (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury.  *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011).  Menard argues that there is no genuine dispute of material fact as to whether it breached its duty of care and whether, if it did, the breach caused Swanda's injury.  ECF No. 40 at 7–8; ECF No. 53 at 4–6.

Before addressing whether Menard breached its duty of care, the Court must first determine what the alleged "duty of care" is.  *Smits ex rel. Short v. Park Nicollet Health Servs.*, 979 N.W.2d 436, 445 (Minn. 2022) ("As in all negligence actions, a prerequisite

6

to . . . liability is the existence of a duty running from the defendant to the plaintiff."). Neither party provides a particularly clear definition. In her complaint, Swanda asserts that Menard displayed an "unsafe chair, not fit for its purpose." ECF No. 1-2 at 4. And in briefing, Swanda asserts that Menard "had a duty to provide a safe chair." ECF No. 48 at 6. Menard, for its part, similarly describes Swanda's claim as asserting that it "improperly assembled" the Leona chair. ECF No. 40 at 8. As both sides appear to agree, the duty of care Menard allegedly owed Swanda was to assemble and display a safe chair. *See, e.g.*, *Oien v. Home Depot U.S.A., Inc.*, 69 F.4th 487, 490 (8th Cir. 2023) (similarly describing a property owner's duty "to keep and maintain their premises in a reasonably safe condition").

With that duty in mind, the Court agrees with Menard that Swanda produced insufficient evidence to create a genuine dispute of material fact as to whether Menard breached it duty. Swanda's theory is that a screw was loose or dislodged from the underside of the Leona chair, and that because the screw was loose or dislodged, Menard must have assembled it improperly. ECF No. 48 at 6. But even assuming that it was loose or dislodged,[2] Swanda provides no evidence that it was assembled that way. That is to say,

---

[2]     Swanda's evidence for the assertion that a screw may have been "loose" comes from a September 23, 2021 statement she made to an insurance investigator that a Menard employee told her "there was a screw or bolt that wasn't tightened." ECF No. 51 at 171. She makes no mention of that alleged statement in her March 19, 2025 deposition. ECF No. 35-1 at 52:20–53:9. Swanda's assertion that the screw was "dislodged" comes from Bougie's deposition, during which Bougie stated that she and an employee noticed a "big bolt on the floor" next to the chair, ECF No. 35-2 at 11:21–12:13, and that an employee told a manager that he would try and put the bolt back in the Leona chair, *id.* at 17:9–14. Swanda, however, did not notice the screw. ECF No. 35-1 at 52:20–21.

Swanda provides no evidence about who assembled the chair, when it was assembled, how it was assembled, or who else interacted with the chair while it was on display. In short, Swanda's claim is based on nothing but speculation that the chair was assembled improperly by a Menard employee. *See Tabish v. Target Corp.*, No. A10-2129, 2011 WL 2519209, at *3 (Minn. Ct. App. June 27, 2011) (granting summary judgment on similar negligence claim where there was "no evidence of improper assembly" and no evidence that the retailer had any knowledge that the product was dangerous); *McDougall v. CRC Indus., Inc.*, 523 F. Supp. 3d 1061, 1071 (D. Minn. 2021) (citing *Fenrich v. Blake Sch.*, 920 N.W.2d 195, 201 (Minn. 2018)) (holding that "[a]s a general matter, a person does not owe a duty of care to another if the harm is caused by a third party's conduct"); *Oien*, 69 F.4th at 490 (affirming summary judgment where plaintiff offered "no evidence that [the retailer] caused the alleged dangerous condition or that it had actual knowledge of the existence of the alleged dangerous condition"). To be sure, it is certainly possible that Menard assembled the chair improperly. But Swanda must do more than assert a plausible theory of her case at this point. *Anderson v. Rugged Races, LLC*, 42 F.4th 955, 961 (8th Cir. 2022) (quoting *Ball v. City of Lincoln*, 870 F.3d 722, 727 (8th Cir. 2017) ("To avoid summary judgment, the nonmoving party must provide 'sufficient probative evidence' based on 'more than mere speculation [or] conjecture.'" (alteration in original)); *Nat'l Bank of Com., of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999) ("A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment.").

Swanda likewise fails to show a genuine dispute of material fact on the causation element. Generally, proximate cause requires a "showing that the defendant's conduct was a substantial factor in bringing about the injury." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (internal quotation marks omitted) (citation omitted). Here, even if a Menard employee assembled the chair incorrectly, Swanda puts forth insufficient evidence that the improper assembly was a "substantial factor" that caused her injuries. Instead, Swanda rests on her own speculation, ECF No. 48 at 6 ("Chairs are not meant to collapse."), or the unsupported speculation of her purported expert, ECF No. 51 at 39 (summarily asserting that "for the chair to collapse as indicated, the screws could not have been properly tightened down").[3] But neither Swanda nor her expert explains how the improper assembly alleged here caused the Leona chair to tip. She provides no evidence, expert or otherwise, as to what effect the failure of one screw would have on the stability of the chair, nor whether any other intervening causes could have caused the chair to collapse even if the one screw caused some alleged stability issues. In fact, Swanda herself testified that she noticed no issues with the Leona chair, either before or after sitting on it. ECF No. 35-1

---

[3]    Swanda also points to a "report" by Peter D. Hill, labeling Hill as ZOL's "expert." ECF No. 48 at 2. Swanda asserts that Hill acknowledges that "uneasiness and issues with the chair would likely be due to improper assembly." *Id.* at 6. But there are three issues with Swanda's assertion. First, Hill is not ZOL's "expert." Instead, he is ZOL's former Chief Financial Officer. ECF No. 35-5 at 3. Second, the "report" to which Swanda points is not a report at all but instead is an email Hill sent to an insurance investigator who was investigating an entirely different event (in Indiana) involving an entirely different chair (a Danbury Swivel Rocker). ECF No. 51 at 179. Finally, even crediting the email as somehow relevant, Hill does not state that "uneasiness and issues" would be caused by improper assembly; instead, Hill states that even improper assembly would make the relevant chair "hard to tip" and that issues were "not likely." *Id.*

at 51:21–53:9; *see Mehner v. Furniture Design Studios, Inc.*, 143 F.4th 941, 949 (8th Cir. 2025) (finding that plaintiff failed to establish causation at summary judgment in part because the plaintiff "himself did not find the defect [in a chair] to be obvious" and later noted that, "prior to its collapse, it 'didn't feel wobbly,' he saw no cracking on the chair or its legs, he perceived nothing amiss about it, and he did not know why it broke"). In short, Swanda again rests on speculation and conjecture, but not evidence, which is insufficient to avoid summary judgment. *See Oien*, 69 F.4th at 491 (noting that the "assertion of the 'mere occurrence' of an accident is insufficient").

Finally, Swanda contends Menard is liable under *res ipsa loquitur*, the doctrine providing that, "in some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a prima facie case." *Res Ipsa Loquitur*, Black's Law Dictionary (12th ed. 2024). To apply the doctrine, the plaintiff must show that an accident (1) was of a kind that does not ordinarily occur in the absence of negligence; (2) the cause was within the defendant's exclusive control; and (3) was not due to plaintiff's conduct. *See Staub ex rel. Weeks v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 636 n.12 (Minn. 2021). But while *res ipsa loquitur* permits an inference of negligence, the plaintiff must provide sufficient evidence to invoke the doctrine at summary judgment, not "mere assertions." *Pape v. Macks, LLC*, No. A10-1417, 2011 WL 1466433, at *4 (Minn. Ct. App. Apr. 19, 2011); *cf. Weiby v. Wente*, 264 N.W.2d 624, 629 (Minn. 1978) (affirming a trial court's refusal to provide jury instructions on *res ipsa loquitur* because there was insufficient "evidence to support the theory").

Swanda's claims are not saved by *res ipsa loquitur* because the Leona chair was not within Menard's "exclusive control" before the accident. As noted above, Swanda brings forth no evidence as to when the chair was assembled or how long it had been on display. Regardless, once it was placed on display, it left Menard's exclusive control and could have been—and presumably was—interacted with by any number of people, including Swanda. And "where lapse of time and substantial opportunity for mishandling of a product by third parties make it equally probable a defective condition developed after leaving the defendant's control," *res ipsa loquitur* does not apply. *Boda v. Viant Crane Serv., LLC*, No. 19-cv-1437 (HB), 2021 WL 4444733, at *9 (D. Minn. Sept. 28, 2021) (quoting *W. Sur. & Cas. Co. v. Gen. Elec. Co.*, 433 N.W.2d 444, 449 (Minn. Ct. App. 1988)); *see Vargo-Schaper v. Weyerhaeuser Co.*, 619 F.3d 845, 851 (8th Cir. 2010) (quoting *Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 862 (Minn.1984)) ("In ordinary parlance, 'exclusive control' connotes that no other person or entity had any control over the instrumentality which caused the damage."); *see also Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1303 (M.D. Fla. 2011) (holding that a display chair was not within a retailer's exclusive control because the retailer "displayed the chair within reach of its shoppers"). Swanda's conclusory assertion that there "is no question that Menard[] had exclusive control and possession of the chair," ECF No. 48 at 7, is unsupported by any evidence, and is entitled to no deference, *Dupont v. Fred's Stores of Tenn., Inc.*, 652 F.3d 878, 884 (8th Cir. 2011) (refusing to apply *res ipsa loquitur* where plaintiffs could not "account for the time" between when the product was placed on the shelf and when plaintiff's injuries occurred). Moreover, the injury at issue—an injury resulting from falling over in a chair—is

11

something that may happen in the ordinary course without any negligence. *See, e.g.*, *Hoven v. Rice Mem'l Hosp.*, 396 N.W.2d 569, 572–73 (Minn. 1986). Menard is therefore entitled to summary judgment on Swanda's negligence claim.

### B. Products Liability

Swanda alleged in her complaint that Menard is "strictly liable" for "displaying a defective and dangerous chair for sale." ECF No. 1-2 at 4. Under Minnesota law, products liability "'is a manufacturer's or seller's tort liability for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product.'" *Berkley Reg'l Ins. Co. v. John Doe Battery Mfr.*, No. 20-cv-2382 (WMW/DJF), 2023 WL 375934, at *2 (D. Minn. Jan. 24, 2023) (quoting *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581 (Minn. 2012)). Products liability "can be based on a theory of negligence, strict liability, or breach of warranty." *Glorvigen*, 816 N.W.2d at 581 (citation omitted). And plaintiffs can assert strict liability against "both the manufacturer of a defective product and the commercial seller of a defective product." *Berkley Reg'l Ins. Co.*, 2023 WL 375934, at *2. The elements of a products liability claim are "(1) a product was in a defective condition unreasonably dangerous for its intended use; (2) the defect existed at the time the product left the defendant's control; and (3) the defect proximately caused the plaintiff's injury." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. Ct. App. 2004) (citing *Bilotta v. Kelley Co.*, 436 N.W.2d 616, 623 n.3 (Minn. 1984)).

As an initial matter, Swanda has put forth no evidence that Leona chairs generally suffered from a design defect or a manufacturing defect.[4]  Instead, Swanda's argument is that the specific Leona chair she sat in was *assembled* improperly.  While less common than a classic products liability claim focused on design or manufacturing flaws, *see Tabish*, 2011 WL 2519209, at *6 (analyzing whether store could be liable under products liability theory for selling a defectively designed product), some courts have categorized an improper assembly claim under the "products liability" umbrella, *see McDougall*, 523 F. Supp. 3d at 1072 (citation omitted) (internal quotation marks omitted) ("Under either negligence or strict liability theories, the crux of the claim is that the product, as provided to the public, was defective because the manufacturing, assembly, inspection, packaging or testing processes failed to turn out the product intended . . . .").

But even if Swanda's claim falls within the products-liability framework, the claim falls short for largely the same reasons as her negligence claim does.  As noted above, Swanda does not show that the Leona chair she sat in had a defect at the time the product left Menard's control.  To be sure, Swanda arguably raises a factual dispute that the chair had a loose or dislodged screw when she sat in it.  But that does not provide evidence, beyond pure speculation, that it was assembled that way by Menard.  *Boda*, 2021 WL 4444733, at *10 (quoting *Daleiden v. Carborundum Co.*, 438 F.2d 1017, 1022 (8th Cir. 1971)) ("A plaintiff's evidence must 'reasonably eliminate[] improper handling or use of

---

[4]     To the contrary, Swanda's own expert noted that he had been provided no evidence that the chair had a "manufacture[r]'s defect."  ECF No. 35-8 at 2.

the product by others' to permit a jury to reasonably infer that the product was defective at the time it left the defendant's control." (alteration in original)).  Likewise, and for the same reasons discussed above, Swanda puts forth insufficient evidence that the alleged defect proximately caused her to fall backwards.  Her assertions that the chair fell backwards because of the defect are just that—assertions.  To survive summary judgment, however, Swanda must point to evidence.  *Pape*, 2011 WL 1466433, at *4 (affirming summary judgment where plaintiff only asserted, without evidence, that defendants had exclusive control and that he did not voluntarily contribute to the injury).

Because Swanda does not establish a "genuine issue as to any material fact" on either the negligence or products liability claims against Menard, Menard "is entitled to judgment as a matter of law."  *Riedl,* 248 F.3d at 756 (citation omitted).

## II.   Claims against ZOL and AMG

Swanda alleged in her complaint that ZOL and AMG—"the manufacturers of the [Leona] chair"—are strictly liable for "displaying a defective and dangerous chair for sale." ECF No. 1-2 at 4.  In their summary-judgment briefing, ZOL and AMG argue that Swanda puts forth no evidence that the Leona chair she sat on was defectively designed or manufactured.  ECF No. 34 at 10–14.  In response, Swanda makes no argument about ZOL's or AMG's liability for defective design or manufacturing.  As a result, Swanda has forfeited those claims.  *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (noting that the complete failure "to oppose a basis for summary judgment

14

constitutes waiver of that argument").[5]  Because Swanda has forfeited her claims against

ZOL and AMG, the Court grants summary judgment to ZOL and AMG.[6]

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Motion for Summary Judgment (ECF No. 38) of Menard, Inc. is **GRANTED**;

2. Motion for Summary Judgment (ECF No. 33) of Z Outdoor Living, LLC and AMG International, LLC is **GRANTED**; and

---

[5]    ZOL and AMG also put forth argument on a "failure-to-warn" claim.  ECF No. 34 at 14–15.  But Swanda did not allege such a claim in her complaint, and ordinarily a party may not introduce a "new theory of liability, not asserted in [a] complaint" at the summary judgment stage.  *Kellar v. Wills*, 186 F. App'x 714, 716 (8th Cir. 2006).  Even assuming Swanda properly raised a failure-to-warn claim, it would not survive summary judgment.  A failure-to-warn claim requires Swanda to prove that ZOL and AMG (1) had a duty to warn; (2) provided an inadequate warning; and (3) the inadequate warning caused the plaintiff's injuries.  *Markel v. Douglas Techs. Grp., Inc.*, 968 F.3d 888, 891 (8th Cir. 2020).  Here, Swanda puts forth no evidence that ZOL and AMG had a duty to warn because she put forth no evidence that ZOL and AMG manufactured a "dangerous product."  *McDougall*, 523 F. Supp. 3d at 1073 (quoting *Gray v. Badger Mining Corp.*, 676 N.W.2d 268, 274 (Minn. 2004)); *see Holverson v. ThyssenKrupp Elevator Corp.*, No. 12-cv-2765 (ADM/FLN), 2014 WL 3573630, at *5 (D. Minn. July 18, 2014) (finding no duty to warn when plaintiff had "not demonstrated that a dangerous condition existed").

[6]    Because the Court agrees that Defendants are entitled to summary judgment on the merits, the Court need not address whether Swanda is judicially estopped from asserting her claims.  Of note, the Supreme Court touched on the issue of "judicial estoppel" this term in holding that to determine whether an omission of a claim in the bankruptcy context was inadvertent or mistaken for purposes of the judicial-estoppel doctrine, courts should look to the totality of the circumstances surrounding the omission rather than narrowing the inquiry to whether the debtor had knowledge of the underlying facts or a potential motive to conceal the claim.  *See Keathley v. Buddy Ayers Constr., Inc.*, 608 U.S. ___ (2026).

3. Complaint (ECF No. 1-2) of Linda Swanda is **DISMISSED WITH PREJUDICE**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 8, 2026                              *s/Laura M. Provinzino*

                                                 Laura M. Provinzino
                                                 United States District Judge